UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JOHN J. STEWART, III, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 3:20-cv-537-PPS |
| ANDREW M. SAUL,<br>Commissioner of<br>Social Security, | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

John J. Stewart, III, appeals the denial of his application for Social Security disability insurance benefits claiming the ALJ committed three errors which require a reversal of his decision. But I will limit my discussion to one: whether the ALJ erred in assessing the opinion of Stewart's treating physician, Dr. Cooke. Because I find that the ALJ erred in analyzing Dr. Cooke's treating opinion, I will REVERSE the ALJ's decision and REMAND on this issue.

### **Background**

John J. Stewart, III applied for disability insurance benefits on March 16, 2017, claiming that he was disabled as of August 1, 2016. [A.R.[1] 15.] His claim was denied initially and denied again upon reconsideration. After a hearing, an ALJ denied Stewart benefits in a written decision. He then lost his administrative appeal and now seeks

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 10. Citations are to the page number in the lower right-hand corner of the A.R.

review in this court.

In the written decision, the ALJ determined that, through the date last insured (December 31, 2018), Stewart had the severe impairment of vertigo. [A.R. 18.] The ALJ also found that Stewart had the non-severe impairments of non-bleeding ulcers, emphysema, and hernia repair. [A.R. 18.] The ALJ then determined that Stewart did not meet any of the applicable social security listings for disability. Specifically, the ALJ examined listing 2.07 (disturbance of labyrinthine-vestibular function). [A.R. 18.]

At the next step, the ALJ determined Stewart's residual functional capacity (RFC). She determined that Stewart was capable of performing light work as defined in 20 CFR 404.1567(b), except that Stewart can lift and carry twenty pounds occasionally and ten pounds frequently; he can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks; Stewart can occasionally climb stairs, or ramps, but cannot climb ladders, ropes, or scaffolds; he can frequently balance and stoop, and occasionally kneel, crouch, and crawl; Stewart is limited to occasional reaching from the waist to the floor with the bilateral upper extremities; he must not be exposed to hazards such as moving mechanical parts or unprotected heights. [A.R. 18-19.] I won't repeat the ALJ's description of the medical evidence included in the written decision. [*See* A.R. 19-22.]

The ALJ then posed the RFC and some additional hypothetical questions to a vocational expert (VE) who testified whether or not such a hypothetical person with Stewart's RFC could likely find gainful employment. The ALJ determined that Stewart

was able to perform his past relevant work as a hotel clerk, both as he performed it and as generally performed. [A.R. 22.] As a result, the ALJ found that Stewart was not disabled within the meaning of the Social Security Act and its regulations.

## Discussion

In a Social Security disability appeal, my role as district court judge is limited. I do not review evidence and determine whether a claimant is disabled. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g).

The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented, but [she] must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest standard, the review is a light one. But, of course, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

Stewart argues that the ALJ erred in weighing the opinion of his treating physician, Dr. Weldon Cooke. [DE 14 at 2.] A treating physician's opinion[2] is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see also White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). "This rule takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport, while controlling for the biases that a treating physician may develop such as friendship with the patient." *Oakes v. Astrue*, 258 F. App'x 38, 43-44 (7th Cir. 2001) (internal citation omitted); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). Once well-supported contradicting evidence is introduced, however, the treating physician's opinion is no longer entitled to controlling weight and becomes "just one more piece of evidence for the administrative law judge to weigh." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). If an ALJ decides not to give controlling weight to a treating physician's opinion, however, she must explain her reasons for doing so. *Scott v. Astrue*, 647 F.3d 734, 740

---

[2] The so-called "treating physician" rule does not apply to claims filed after March 27, 2017. A new rule governs those claims. *See* 82 F.R. 5844, 5853, 5869. But because Stewart's claim was filed on March 16, 2017, the old treating physician rule applies (if just barely so) rather than the new SSA rules. *See* SSR 96-2p, 1996 SSR LEXIS 9, at *1-4 (July 2, 1996) (rescinded Mar. 27, 2017); 20 C.F.R. § 404.1520c(a).

(7th Cir. 2011). Failure to do so is cause for remand. *Id.* "ALJs must decide the weight of a treating physician's non-controlling opinion by considering, to the extent applicable, the treatment relationship's length, nature, and extent; the opinion's consistency with other evidence; the explanatory support for the opinion; and any specialty of the treating physician." *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018); *see also* 20 C.F.R. § 404.1527(c). This is where the ALJ erred.

Stewart's treating physician, Dr. Weldon Cooke, provided a medical assessment on April 20, 2017. [A.R. 236.] Dr. Cooke opined that Stewart could stand for only two hours and sit for four hours in an eight-hour workday "due to [a] perforated right ear drum – for which he has been operated on 3 times without success." *Id.* Dr. Cooke opined that Stewart could only occasionally reach above the shoulders, reach down to waist level, and reach down towards the floor. *Id.* Dr. Cooke specifically noted that Stewart would need to hold onto something for balance to reach down towards the floor. *Id.* Dr. Cooke opined Stewart could lift and/or carry less than five pounds in an eight-hour period. [A.R. 237.] He also opined that Stewart could not travel alone, and that he would have trouble with bending, squatting, kneeling, and turning his body. *Id.*

The ALJ afforded little weight to Dr. Cooke's opinion. [A.R. 21.] The ALJ found that Dr. Cooke's opinions included "several extreme limitations that are not consistent with the record." [A.R. 21.] The ALJ states that she is "not sure" how Stewart's right ear perforation could cause limitations to standing for two hours and sitting for four hours in an eight-hour work day. *Id.* The ALJ also found that Dr. Cooke's opinions regarding

Stewart's need to hold onto something for balance while reaching was contradicted by his ability to ambulate at the consultative examination without needing to hold onto anything. *Id.* Finally, the ALJ found that although Dr. Cooke opined Stewart could lift less than five pounds, he had 5/5 muscle strength during the consultative examination and "no other medical opinion indicates that [Stewart] has this severe deficit in strength." *Id.*

Stewart asserts that the ALJ failed to address the checklist of factors required by 20 C.F.R. § 404.1517(c). Specifically, Stewart argues that the ALJ failed to address the length, nature, or extent of the treating relationship with Dr. Cooke. [DE 14 at 11.]

The medical record indicates that Dr. Cooke treated Stewart from at least 2003. [A.R. 237.] The records further show that Dr. Cooke treated Stewart at least eight times between October 2015 and August 2017, when he transferred care to Dr. Ali. [A.R. 231-34, 280, 282.] The ALJ provided no discussion of the 14 year treating relationship between Stewart and Dr. Cooke as required by 20 C.F.R § 404.1527(c)(2)(i-ii). In doing so, the ALJ failed to explain how the 14 year treatment relationship factored into the analysis or whether the length of the relationship weighed in favor of Dr. Cooke's opinion. *See Kimberly L. W. v. Berryhill,* No. 17 C 50281, 2019 WL 354980, at *6 (N.D. Ill. Jan. 29, 2019) (finding error where the ALJ failed to "discuss the long treatment relationship" between claimant and the treating physician, which "weighs in [the treating physician's] favor"); *see also* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating

source, the more weight we will give to the source's medical opinion."). The ALJ provided no discussion of the extent of the treating relationship between Stewart and Dr. Cooke, which included treatment for many of Stewart's impairments. The ALJ also failed to acknowledge when Dr. Cooke started treating Stewart, and there is no indication of how (or whether) she weighed that fact in the analysis. Based on the ALJ's brief explanation in the decision, I cannot determine whether the ALJ sufficiently evaluated the factors relating to the treating relationship, which may support granting Dr. Cooke's opinion more weight. This prevents meaningful review of the ALJ's decision.

What's more, the ALJ engaged in improper speculation in saying that she "is not sure how a [perforated right ear]" could cause the sitting and standing/walking limitations opined by Dr. Cooke. [A.R. 21.] But speculation is not evidence. *See White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("[s]peculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence."); *see also Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995) (same). And indeed, the speculation appears to be wrong; a perforated ear drum *can* lead to problems with balance and vertigo, and therefore problems sitting and standing.[3] Dr. Cooke specifically stated the three operations on Stewart's perforated right ear drum were unsuccessful and he experiences persistent vertigo. The ALJ's conjecture about the

---

[3] https://thehearinginstitute.org/what-you-shoud-know-about-eardrum-ruptures/ (last visited June 21, 2021); https://www.raleighcapitolent.com/blog/what-causes-your-eardrum-to-rupture?entryid=83&tabid=89 (last visited June 21, 2021) ("The signs of a ruptured eardrum include: … vertigo … weakness or dizziness").

consequence of that malady is not evidence to the contrary.

The ALJ also found that no other medical source opined that Stewart required the "extreme" limitations opined by Dr. Cooke with regard to lifting, carrying, sitting, and standing. [A.R. 21.] While it is true that no other medical source opined that Stewart would be as limited in those specific areas, there is medical source evidence that generally supports Dr. Cooke's opinion, which the ALJ failed to discuss. When Dr. Cooke retired, Dr. Ali took over Stewart's care. [A.R. 282.] Dr. Ali provided a medical opinion letter stating that although Stewart is compliant with care, he continues to suffer from dizziness due to his chronic vertigo and is unable to drive or work due to his condition. [A.R. 328.] Dr. Ali also provided an RFC assessment form. In the assessment, Dr. Ali opined that Stewart could stand for eight hours in a workday and could sit upright for 6-8 hours in a workday. [A.R. 331.] However, Dr. Ali also opined that Stewart would struggle with ambulation and could lift no more than 11-20 pounds. [A.R. 331-32.] While these opinions seem to contradict Dr. Cooke's opinion, Dr. Ali's narrative opinion provides support for Dr. Cooke's findings. Dr. Ali opined that Stewart would be unable to sustain work on a continuing basis due to his vertigo and "chronic balance problems." [A.R. 332.] Dr. Ali stated that these symptoms were all due to a "traumatic rupture" of his right ear along with several surgeries. [A.R. 332.] The ALJ failed to consider how Dr. Ali's opinion supports Dr. Cooke's opinion. Both physicians opined that Stewart's vertigo and chronic dizziness due to his right eardrum perforation would limit his ability to work. While it is true that the determination of

disability is reserved for the Commissioner, in making that determination, the ALJ needed to address the fact that Dr. Ali and Dr. Cooke's opinions largely aligned with one another. *See* 20 C.F.R. § 404.1527(d).

The ALJ also found that Stewart was not receiving continued treatment for his vertigo in the period at issue. First, the ALJ did not seem to consider Stewart's three failed surgeries on the right ear. And more to the point, it is unclear from the record what other treatment options were available for Stewart. Vertigo has many possible causes, and treatment for vertigo is dependent on the cause of the vertigo.[4] Dr. Cooke informed Stewart that his vertigo was caused by the scar tissue and nerve damage to his ear due to the repeated surgeries. [A.R. 46.] Stewart testified that he was told "you just have to learn to live with this." *Id.* He testified that the nausea, the dizziness, and the duration of the vertigo attacks have persisted, but that the "duration is what's become the issue." *Id.* Stewart stated that the vertigo attacks can last from six hours to a full day. [A.R. 47.] The ALJ seemed to not understand vertigo, as she asked questions at the hearing about whether he was passing out or tripping over things when he fell due to his vertigo, and she asked if it was a "blood pressure, vasovagal, syncope," issue. [A.R. 51.] Rather than ask a medical expert her questions, the ALJ misunderstood the cause of vertigo and seems to have assumed that a lack of continued treatment indicates that Stewart is not struggling with vertigo. However, as noted above, vertigo is a vestibular

---

[4] https://www.nhsinform.scot/illnesses-and-conditions/ears-nose-and-throat/vertigo#treating-vertigo (last visited June 22, 2021).

-9-

impairment, and treatment varies based on the cause of the vestibular impairment.[5] Stewart has already received three surgeries on his ear, and they were unsuccessful. The result of all of this is that the ALJ has not provided a logical bridge from the evidence to her conclusion. There is no evidence that there was treatment available for Stewart's vertigo. On the contrary, Stewart testified that he was told it was something he would "just have to learn to live with." [A.R. 46.] The ALJ made similar errors in her discussion of Dr. Ali's opinion, again relying on the "limited treatment" for Stewart's vertigo without considering that Stewart appears to have been out of treatment options.

Similarly, the ALJ confuses the limitations caused by vertigo. In the discussion of both Dr. Cooke's and Dr. Ali's opinion, the ALJ discredits the opinions that Stewart would need to hold onto things for balance when reaching to the ground. [A.R. 21.] Vertigo is a vestibular impairment, and balance is controlled by a multitude of senses, including the vestibular organs in the inner ear.[6] Vertigo "is the false sense that your surroundings are spinning and moving. With the inner ear disorders, your brain receives signals from the inner ear that aren't consistent with what your eyes and sensory nerves are receiving. Vertigo is what results as your brain works to sort out the confusion."[7] One type of vertigo, benign paroxysmal positional vertigo ("BPPV") can be caused by injury to the inner ear (including damage that may occur during ear

---

[5] https://www.ucsfhealth.org/conditions/vertigo (last visited June 22, 2021) ("treatment for vertigo depends on the diagnosis and may include medications or surgery, as well as physical therapy to improve stabilization, retrain the brain and relieve symptoms.")

[6] https://vistublar.org/article/what-is-vestibular/the-human-balance-system/the-human-balance-system-how-do-we-maintain-our-balance/ (last visited June 23, 2021).

[7] https://www.mayoclinc.org/diseases-conditions/dizziness/symptoms-causes/syc-20371787 (last visited June 23, 2021).

surgery), and is often triggered by changes in head position, such as bending over.[8] While some people may feel out of balance when standing or walking, others may struggle with changing positions from sitting to standing or with bending over or looking up. *Id.* It seems likely that the ALJ misunderstood vertigo in finding that the ability to ambulate without assistance belies the need for assistance when reaching toward the ground. The ALJ did not support this assertion with any medical evidence, and two of Stewart's treating physicians opined that altering head position to reach down would require something to assist with balance. *Id.* The ALJ did not support her decision with substantial evidence and failed to build a logical bridge between the medical evidence and her conclusion.

In sum, the ALJ erred in analyzing the opinion of Dr. Cooke, an error which is compounded by the ALJ's lack of understanding of vertigo, its symptoms, and how it is regularly treated. On remand, the ALJ should properly analyze Dr. Cooke's opinion using the regulatory factors and if needed, obtain medical testimony regarding vertigo to clarify any questions she may have regarding the impairment. Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Stewart. He can raise those issues directly with the ALJ on remand.

**Conclusion**

For the foregoing reasons, the decision of the ALJ denying John Stewart, III's application for Social Security disability benefits is REVERSED and REMANDED for

---

[8] https://www.mayoclinic.org/diseases-conditions/vertigo/symptoms-causes-syc-20370055 (last visited June 23, 2021).

further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: June 25, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT